### EDMUNDS v. BOARD OF EXAMINERS IN OPTOMETRY FOR TERRITORY OF ALASKA et al.

No. 4308.

District Court of Alaska. First Division. Juneau.
Feb. 18, 1939.

H. D. Stabler, of Juneau, for plaintiff.
Faulkner & Banfield, of Juneau, for defendants.

ALEXANDER, District Judge.

This is a suit challenging the legality of the Territorial Board of Optometry and to compel it to restore the li-

cense of the plaintiff, heretofore cancelled, and compel it to issue him a certificate of registration or a license for the year 1939.

The statute assailed in this proceeding is Chapter 47, section 2709 et seq., Compiled Laws of Alaska 1933.

This act provides for the creation of a Territorial Board of Optometry, consisting of three members appointed by the Governor, and invested inter alia with the right to issue, revoke or suspend the license of any person to practice optometry in the Territory of Alaska as therein provided.

After alleging that he was admitted to practice optometry in the Territory of Alaska in 1934 by the said Board, and after receiving an annual license or certificate for 1938, the plaintiff complains that his license for 1938 was revoked by said Board and annual renewal certificate for 1939 denied by said Board in derogation of the statute, the pertinent part of his complaint reading as follows:

"That thereafter, to-wit on or about November 25, 1938, at Juneau, Alaska, two members of said Board of Examiners in Optometry to-wit, the said Rae Lillian Carlson and one Robert Simpson, pretendedly sitting as a three-member Board of Examiners in Optometry, on hearsay evidence and on ex-parte affidavits not served upon him, and without giving him any opportunity whatever to face the persons who made said affidavits, without giving him any opportunity to cross examine the persons who made said affidavits; and without producing any witnesses in person against him; and without giving him the benefit of a jury trial; in violation of his constitutional rights; and in violation of Section 2719 Compiled Laws of Alaska, prescribing the procedure of said Board in revoking certificates of registration and the annulment of registration, pretendedly revoked the plaintiff's license to practice optometry in the Territory of Alaska.

"That said pretended revocation of plaintiff's license and right to practice optometry in the Territory of Alaska, was, and is, void and of no effect whatever, for the further reason that the legislature of Alaska was without legislative power or authority to delegate to the said Board of Examiners in Optometry the power to hear, try and determine the matters for which the plaintiff's said license to practice optometry in said Territory was pretendedly revoked; or the power to revoke the plaintiff's license and legal right to practice optometry in the Territory of Alaska, such powers being by law exclusively vested in the District Court of Alaska."

It is further alleged: "That under the provisions of the said act of the Alaska Legislature it was, and is, the legal ministerial duty of said defendant secretary to issue a renewal certificate for the year 1939, of plaintiff's said certificate of registration upon receipt of plaintiff's application for renewal and fee as aforesaid, but said defendant secretary refused, and still refuses, to perform the duty of said office in that respect."

That the Territorial Legislature had the right to pass such legislation is so well established as to require no citation of authorities.

It is, however, equally well established that the Board of Optometry created by such statute, being purely a creature of the legislature, has no powers other than those contained in the statute itself, and that both the statute in question and the powers invested in said Board are to be strictly construed.

The statute in question, after providing for the creation and appointment of a Board of Examiners in Optometry, invests that Board with the power to make regulations governing the practice of optometry in Alaska; provides for the examination and annual registration of persons seeking to practice optometry therein. It then invests said Board with the power to revoke any certifi-

cate of registration or exemption the holder of which is guilty of a violation of any of the rules, orders or regulations promulgated by it, and in addition thereto said Board is given the power to revoke any certificate of registration or exemption granted by it, and to suspend the right to practice of any person inter alia "guilty of unprofessional conduct, and the said board shall have the power to determine what acts on the part of a licensee constitute unprofessional conduct." Section 2718.

The statute then prescribes the procedure to revoke, in Section 2719: "Sec. 2719. *Procedure to revoke.* The proceeding for the revocation of a certificate of registration or for the annulment of registration shall be begun by filing a written charge or charges against the accused. These charges may be preferred by any person or corporation or by members of the board. Said charges shall be filed with the secretary of the board and a time and place for a hearing of said charges shall be fixed by the board as soon as convenient, and a copy of the charges, together with a notice of the time and place when they will be heard and determined, shall be served upon the accused or his counsel, at least fifteen days before the date actually fixed for said hearing. At said hearing, the accused shall have the right to cross-examine the witnesses against him and to produce witnesses in his defense, and to appear personally or by counsel. The said board shall make a complete written report of its findings, and if the board shall unanimously find that the said charges, or any of them, are sustained, the board may thereupon revoke the said certificate of the accused or annul his registration, or do both."

The evidence adduced at the trial shows that the plaintiff herein had been a thorn in the sides of the Optometry Board for a long time. That in January, 1938, the Board had threatened to revoke the plaintiff's license, for unprofessional conduct, but that following said threat the plaintiff had his attorney herein, Mr. Stabler, go to the Board

for him, at which time Mr. Stabler succeeded in convincing the Board that it had adopted no regulations under which it could proceed. That the Board thereupon adopted rules and regulations, among which are those numbered "A" and "B" in evidence in this case; and mailed copies of these rules and regulations to its licensees. Plaintiff admits receiving a copy of these rules and regulations in May, 1938, but apparently paying no attention thereto was notified by the Board by a telegram dated September 25th, 1938, that charges had been filed against him and ordering him to appear before the Board on October 12th to defend himself on said charges. That two days later, on September 27, 1938, the plaintiff herein arrived in Juneau, and on the same day the Board caused to be served upon him written charges preferred by the President of said Board against him, together with a notice fixing the time and place for the hearing of said charges on October 15th. The plaintiff remained in Juneau for two or three days and then departed, without seeing the Board or any member thereof about said charges.

That subsequently, and at plaintiff's request, the time for hearing and determining said charges was continued from time to time until November 25th, 1938. Plaintiff further admits that he never at any time made or filed any answer or denial of said charges, either oral or written, but on the day for the hearing of said charges, Mr. Stabler, his attorney, appeared at said hearing; and what transpired there constitutes the only conflict in the testimony in this case. The plaintiff testified that he authorized Mr. Stabler to appear at said hearing, and Mr. Stabler claims that he appeared pursuant to such authorization. Dr. Simpson, President of the Board, however, testified that when Mr. Stabler appeared at the time and place set for the hearing he said that his client had "run out on him" and that he was just there because he represented Dr. Edmunds last spring. Dr. Carlson, the Secretary of said Board, testified that as she recalled, Mr.

Stabler said he didn't know what to do; that he hadn't heard from Dr. Edmunds, and wanted the hearing postponed until he could hear from Dr. Edmunds. Both of the members of said Board agree that what Mr. Stabler sought was a continuance of the hearing, but as no good reason was offered why the hearing should be postponed, and no denial or answer, either oral or written, had been made or filed to the charges, that Mr. Stabler's request for a continuance was denied; and the Board then proceeded to hear and determine the charges.

It is contended by plaintiff's attorney that all of the evidence introduced or considered was that marked as Exhibits 1, 2, 3, and 4. The members of the Board deny this and say that they had a great mass of complaints in letter and affidavit form, together with numerous newspapers and newspaper clippings before them, and contend that they considered all of these in arriving at their findings and determination of the case, and that the items marked as exhibits 1, 2, 3, and 4 were so marked by Mr. Stabler himself. They further testified that Mr. Stabler knew all about the other material above referred to, having gone over it with them at previous times, and being themselves ignorant of court procedure they thought it unnecessary to introduce it formally in evidence or to have it marked as exhibits.

The members of the Board further testified that they had the proxy of Dr. Brown, the other member of the Board, to act for him at the meeting, but that they made no final decision until Dr. Brown was advised of their action and had given his approval thereof.

From the foregoing the Court finds the facts to be:

That written charges were filed against the plaintiff by Dr. Robert Simpson, the President and a member of said Board; that said charges were filed with the Secretary of the Board and a time and place for hearing the said charges fixed by the Board as October 15, 1938; that a copy of said charges, together with the notice of the time

and place when they would be heard and determined was personally served upon the plaintiff (accused) on September 27, 1938 (more than fifteen days before the date actually fixed for said hearing) and that same were continued from time to time at Dr. Edmunds' request, until November 25, 1938. That no answer, either written or oral, was ever made to said charges by Dr. Edmunds or his attorney, or anyone in his behalf; that at the time finally fixed for said hearing, to-wit November 25, 1938, no appearance was made by Dr. Edmunds or his attorney or anyone in his behalf; that on November 25, 1938, there were present for said hearing Dr. Robert Simpson, a member of and President of said Board, and Dr. Rae Lillian Carlson, a member of and Secretary of said Board; that Dr. Arthur S. Brown, the third member of said Board was not present in person but had theretofore given the other members of said Board his proxy and power to act for him in said matter; that on November 25 the said Board convened and heard and considered said charges and thereafter submitted their findings to Dr. Brown, the third member of said Board, and that same were approved by him.

That thereafter said Board made a complete report of its findings, wherein and whereby the Board unanimously found that said charges were sustained, and the certificate of Dr. Edmunds, the plaintiff herein, was thereupon revoked and his annual registration for 1938 annulled, and Dr. Edmunds notified accordingly.

The court further finds that the plaintiff, Dr. Edmunds, thereafter made application for a renewal of his annual registration certificate for 1939, accompanied by the prescribed fee of $10, but that same was refused and the fee tendered by him therefor returned to him.

That the law referred to (Chapter 47, C.L.A.1933) was a valid exercise of the legislative power of the Legislature of the Territory of Alaska, and that said act is valid.

That the Board of Examiners in Optometry is a legally constituted Board, and that the acting members thereof are the duly appointed, qualified and acting Board of Examiners in Optometry, and as such have the right and authority to grant and revoke licenses to practice optometry in the Territory of Alaska in accordance with said act.

■ That the written complaint and notice served on Dr. Edmunds on September 27, 1938, requiring him to appear before said Board on October 15, 1938, and answer said charges made against him by the President of said Board, was in strict compliance with the terms of said act, and a valid exercise of the powers of said Board, and that said Dr. Edmunds was required thereby to appear and defend himself on said charges at the time therein named, or such time as the hearing thereon was later continued to.

That said Board acted in strict compliance with the statute in revoking the license and annual certificate of registration and in refusing to grant him a license to practice in 1939.

■■ That in view of the fact that no answer or denial was ever made by Dr. Edmunds to the charges so made and filed against him, either by himself or his attorney, or anyone in his behalf, and in view of the court's finding that neither Dr. Edmunds nor anyone in his behalf, made any appearance at the time and place set for said hearing, it was not incumbent upon the Board to call any witnesses or receive any evidence in support of said charges, but that said Board was justified in treating said charge as confessed and entering its findings accordingly, and that said Board's action in the premises was legal and proper and in accord with the provisions of said act, and that its findings upon said charges, under the circumstances, was a valid and legal exercise of its powers under said act. It is not necessary that the Board follow

technical legal procedure. A full and substantial hearing of the charges, where denied, is all that is required.

It therefore follows that plaintiff's petition for a writ of mandamus must be denied; and it is so ordered.

Findings and judgment may be prepared in accordance herewith.